Good morning. Your Honors, may it please the Court, Henry Cruz for the Petitioner, Mr. Barriga. There are several issues before this Court. I'd like to jump into one issue, which is the Board, whether the Board had applied the regulation at 8 CFR section 1212.7d to the correct offense. In concluding the Petitioner's offense was violent or dangerous under the regulation, the Court found that the record of conviction showed the Petitioner was convicted under subsection 1A of the Indecent, excuse me, of the Indecent Liberty Statute, which involves forcible compulsion. However, the plea agreement, which the BIA does not even cite to in this decision, shows the Petitioner actually admitted to the elements under subsection 1B. When the Court's examining a record of conviction with a guilty plea, the Court can only look to the facts to which the defendant assented in determining which offense he was convicted of. It says he pled to the indictment, and then there's other language there. The question I had, and I'm going to ask the Government, too, it looks to me maybe like, though, that when the Court was doing the guidelines, it looked like it used the guidelines for subsection B. Do you know? I have no idea, Your Honor. Well, that would support your position if, in fact, that's true. I hope the Government's going to know. But it looks, if you look at the guidelines, it looks maybe like the Court calculated the guidelines under subsection B. But if that was the case, let's say if we say if he was convicted under subsection B, should this Court remand to the BIA to determine in the first instance whether it's a violent or dangerous crime? Yes, I think that would be the proper procedure, Your Honor, because we're dealing with a regulation that the Board has been given the authority to interpret, and we just have no decision, no language in the Board's decision on how they would rule on whether subsection 1B was a violent or dangerous offense. Because both A and B are CIMTs, right? They're crimes against moral turpitude, right? Well, Your Honor, another issue that we provided is that it's not categorically a CIMT because some of the language in the Indecent Liberties Statute, specifically under subsection 1B, could involve a minor who voluntarily consented, actually consented, to the sexual conduct, even though by definition a minor could not. Under subsection 1B, the statute to touch you must be for sexual gratification, and a sleeping victim is deemed incapable of consenting, so how could this not be a CIMT? Well, again— You know, we're not supposed to look at any possible thing that you can dream up. I understand. I think my best argument is that the statutory definition, for example, for mental incapacity, it would include a minor who might not have the capacity to consent to the sexual contact, but that doesn't necessarily preclude the minor from actually consenting to the sexual contact. And under this Court's precedent, such as Quintero Salazar, just having sexual contact with the minor in itself is not a CIMT. I'd like to move on to the other issue of whether the Board abuses discretion in finding that there was not a prima facie case of hardship under the regulation. The government has raised a jurisdictional issue. This Court isn't allowed to review this decision, but I think Fernandez v. Gonzales takes care of that issue because in that case it's stated, it held that where a court is reviewing a prima facie determination on a motion to reopen, where there's new relief being sought in that motion to reopen, then the court does have jurisdiction because there's been no prior discretionary determination on the relief sought that was done. But you seem to be trying to establish that he wasn't, that the, they said he was an adult, right? They said that he was an adult when he first entered. Was there evidence in the record that he was an adult? And then evidence, was there some evidence that he was an adult in the record? Well, the, what we are saying is that the evidence in the record shows that he first entered in 1977, which when he was a child, when he was 16 years old. Well, I guess what I'm saying, if there was some evidence since they did find that he was an adult, that seemed to be part of the component. And you can't, you know, maybe if the wrong standard was applied, then they revisit the hardship. But it seems to me that there's certain things that can't be revisited. If there was, you know, can we revisit that determination? Can the, I don't know that we can look at that determination. Well, it's an abusive discretion standard. So basically the court's determining whether they were arbitrary in reaching that determination that he had first entered in 1986 as an adult. And I think the record belies that finding because the record shows that he actually first entered in 1977. But a hardship determination is generally not reviewable. Well, so going back to the jurisdictional issue, I think Fernandez takes care of that because here the court is reviewing a motion to reopen in which the petitioner was seeking relief for the first time. In the underlying proceedings, there was never any discretionary determination on the waiver application. In fact, the board's decision, in the board's second decision, it stated in a footnote that it would have been premature to rule on the merits of the waiver application because there had not been a visa petition approved at that time. Once the visa petition was approved, we filed the instant motion to reopen this currently before this court. And Fernandez states clearly that when under those factual circumstances, the board does have, I'm sorry, the court does have jurisdiction to review the discretionary determination on hardship. I'd just like to point out the ultra virus argument where the, although the court had, and he had dealt with the, had held that the regulation was valid. It was only looking to subsection 1182 H1B. Here petitioner also qualifies for the waiver under subsection 1182 H1A. And I think if you look at the language of that part of the statute and the regulation, I don't think that they can be reconciled. And I think they are contradictory because that section specifically applied to the measuring the dangerousness and the rehabilitation of the alien. And as Mejia held, the regulation was passed to address Congress's policy against admitting potentially dangerous aliens. Well, this statute specifically addresses that by allowing aliens whose offense, disqualifying offense is more than 15 years old, the alien is rehabilitated, and the alien is found to not, admission of the alien is found not to be contrary to the safety of the United States. And so I just, I don't think it makes sense to, on the one hand, Congress passing a statute which was actually intended to expand the waiver provision to admit these, allow these aliens to seek the waiver, where on the one hand, find under the statute the alien is rehabilitated, not a dangerous society, but then pass a regulation that says as a matter of law that offense makes that alien dangerous. So I don't think that the two things can be reconciled. I think the regulation clearly contradicts and supplants Congress's intent under subsection H1A. Could you go back on the crime of moral turpitude and address the government's 28J letter of this case, albeit an older case, Morales-Alvarado, that said in a footnote that indecent liberties is a crime of moral turpitude. Yeah, I have two responses. First, that was prior to this, the court's tailored categorical approach, and therefore there wasn't any application of the categorical and modified categorical approach in that case. But furthermore, that wasn't even an issue in the case. The issue was whether there was a final conviction for immigration purposes. There was no analysis. There was nothing on whether that indecent liberties offense was a crime of moral turpitude. They just assumed that. And in this Court's jurisprudence, these assumptions and findings without analysis don't bind a panel on the issue. Are we talking about Morales? I'm sorry? What case are we talking about now? Oh. Morales-Alvarado. Morales-Alvarado. Yes. That was a different statute in there. It was pre-1979. That's correct. The statute now has changed. That's correct. That's the other response, is that they amended the statute several times in 1988, which is the statute that my client was convicted under. He said he didn't contest it, and then we dropped a footnote to explain perhaps more than we should have. Okay. Yes, Your Honor. And without objection, I'd like to reserve the remaining time for rebuttal. Thank you. May it please the Court. My name is Ann Maya Wendell. I represent the United States Attorney General. As a preliminary matter, I do want to acknowledge Petitioner's contention regarding jurisdiction under Fernandez and the Court's subsequent decision in Garcia, which does touch upon Fernandez as well. To the extent that the Court's review is not limited pursuant to those decisions, we do preserve the issue by asserting that the jurisdictional limitation at 8 U.S.C. 1252A2B does preclude jurisdiction over any judgment regarding the grant of relief, including when made in the context of a motion to reopen. Just because it's in the context of reopening does not change the discretionary nature of the assessment. Right. But going to the ultimate question presented. Apply the right standard. Yes, Your Honor. And ultimately, in terms of the question presented by Petitioner, even notwithstanding any jurisdictional claims that is made, Petitioner still loses because. Let me ask you this about, did you look at how the offense level was calculated? And it looks like the Court used the offense level tied to B and not to A. Your Honor, I did notice variations in terms of the amended information as well as the plea statement and then the ultimate judgment, but that doesn't really, that's not significant in this case because regardless of whether Petitioner admits. Well, if I'm the judge and I thought that I was sentencing someone under B, that wouldn't be significant? Your Honor, here in this context, that challenge would only be appropriate with the state court. It's not something in the context of immigration matters. Then we have to accept what is presented in the record. And here we have at a minimum it's going to be a conviction for either indecent liberty by forcible compulsion or admission that it was indecent liberty on a minor. And under the court's case law in Nunez, then, actually I apologize, it's United States v. Wood, the completed offense of indecent liberty with a minor presents a serious potential risk of physical injury and is a crime of violence. And there's a Washington state provision that defines sexually violent offenses, and that includes. Would you concede that there's a little bit of confusion over whether it's A or B? Your Honor, it appears that there would be some confusion, but. I'm just asking you, as representing the government, if you look at it and you say, you know, I mean it does say pled to the indictment, and if you pled to the indictment, then it's A. All right, but there's some language in there that they include in there that looks kind of B-ish. But then if I were the prosecutor and I look over there and it says, well, everyone here, they sit there, do they sentence them like it's under B? I mean, do you care anything about the truth of that? Your Honor, we do care, but we also recognize that in the immigration proceedings, the determinant of fact would be the immigration judge and then the abortion. They determined that based on the evidence that the petitioner was convicted for indecent liberty by forcible compulsion. But even if there was some error and the petitioner had actually intended to be convicted only under or the sentencing court had determined that it should have been only under indecent liberty on a minor, then it still constitutes a crime involving moral turpitude. I agree with you on that, but that's not the same determination as the violence one. That's an additional step, right? Your Honor, that is a separate step. But even under that, United States v. Wood recognizes that when it involves a minor, that's still a crime involving violence. Okay, has the BIA determined it in the first instance that B is a crime of violence or using that word, a violent or dangerous crime? Is there a BIA case that says that the B section is a violent or dangerous crime? Your Honor, I'm not aware of a board decision that has addressed this specific. But, however, there is board case law that deals with children and sexual offenses. And those acknowledge that sexual offenses involving minors are crimes involving moral turpitude. As far as whether it's a dangerous offense, then even assuming there was any error, ultimately because of Washington state law and because of United States v. Wood, there would be harmless error. So, I mean, usually if the BIA hasn't spoken on something, we let them make the determination in the first instance. Yes, Your Honor. And that here, if we go back to then just the record and the agency's authority to make a factual determination, and they concluded that as a factual conclusion that Petitioner was convicted of indecent liberty by forcible compulsion, then the question is whether the record compels a contrary conclusion. And that is a question that the court. Is Section B of the statute? Your Honor, in terms of forcible compulsion, it is Section A. A, I'm sorry, I flipped them. B, the minor with a crime of violence is the other one. Your Honor, yes. And so when we look at even Washington law, though, then it treats both types of offenses as crimes of violence. So, regardless, it wouldn't make a difference in sending it back to the agency because the question, when it comes to whether or not the offense involved danger or violence, has already been resolved by the state court. And when it comes to- I think you're kind of turning a little bit on the head here. I mean, I agree with you that it should be. It should be. But assuming that if we believe that it, you know, but as a legal matter, if we believe that the record shows that he was convicted of B, then we know that that's a CIMT. Yes, Your Honor. But the BIA does not have any decisions in the first instance about whether that's a dangerous or violent crime. Not specific to this provision, Your Honor. Correct. So, generally, we let them determine in the first instance whether something is a dangerous or violent crime. Seems to me it should be, but they haven't done it. So you're saying that we should just go ahead and do it. Your Honor- The Supreme Court has told us we can't do that. Yes, Your Honor. And to the extent that it is within the agency's discretion to make a judgment as well, then it is up to the agency to make that decision in the first instance. All right. Let's assume. But what evidence is there in the record about him being an adult in the hardship proceeding? Your Honor, the only evidence is based on his admission. And the warrant of- there was some- the record of deportable alien, various other documents. There is nothing- and all of that evidence indicates that he last entered in 1986. And the only other document that might indicate an earlier entry indicates that he arrived in 1979. The assertions made by Petitioner that he arrived in 1977 are based purely on an allegation included in an I-130 petition where he said that he believed he arrived in November 1977. But there is no actual evidence to support that. What is your evidence to support that he was an adult? Yes, Your Honor. So in terms of the Board's decision, even looking at it beyond the jurisdictional limitations presented by this case, the Board's decision to deny the motion to reopen and request for remand was within its broad discretion, not only because the statute is categorically a crime involving moral turpitude, where Petitioner's only assertions are based on theoretical possibilities and not actual reasonable probability. There's no actual case that Petitioner can offer. He cites the imaginary hypothetical situation where it may involve someone who's 17 who consents. However, looking at Washington State law, consent can be a defense. And the times when capacity to consent is determinative is then placed on the state to the burden of proof is on the state to then establish that the person, that consent doesn't really make a difference because the person was incapable of providing it. So there is no case that Petitioner has offered. And under Duenas-Alvarez, Silva-Trevino, and this Court's decision in Nunez, then at a minimum, he needs to offer one actual case. We're not discussing hypotheticals here, and that's all that Petitioner has presented. And when looking at the statute, then all three of the categories are crimes which involve scienture and reprehensible conduct that is inherently base, violent, and depraved. And if you look at Nunez, even that decision involving indecent exposure, that decision stated that sexual offenses deemed categorically CIMTs, that they either involve actual harm or a projected group of persons or a combination of both. So here there's nothing to establish that the modified categorical applies. You have used your time. Yes, Your Honor. And finally, may I? Oh, thank you, Your Honor. Last sentence. Nice. Thank you, Your Honor. Okay. Okay, first I'd like to address the issue of whether there's some evidence that he entered as an adult. Even the government asserts that he first entered in August of 1979, which is based on the charging document, the old charging document. And on that date, he was five months over the age of 18. But even under the definition of a child on the Immigration Act, a child is defined as someone who is under 21. And so under the immigration definition of a child, he would still have been considered to have entered as a child because he was only 18 at the time. And furthermore, even if the Court accepts that there was some evidence that he first entered as an adult, I still think that that doesn't affect the fact that he still has established a prima facie case on hardship because that's the sole factor there. In my 28-J letter, I cited several cases where the BIA found exceptional and extremely unusual hardship, even where the aliens all entered for the first time as an adult. In fact, they all entered at an older age than the petitioner did in this case. And in those cases, the aliens actually had less familial equities than my client does in this case. My client is a 50-year-old man who's been here for over 30 years. He spent practically his adult entire life here in the U.S. He has three adult U.S. citizen children. He has a lawful permanent resident father who's 75 years old and whom he is currently caring for. I think all of those equities, there were much more. He has much more equities than in those cases in the 28-J letter, and yet the Board still found in those cases that the person established exceptional and extreme unusual hardship. So I think it's completely arbitrary for the Board to have simply relied on the mere fact that he first entered as an adult as a disqualifying factor to overcome hardship. You have used your time. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan